**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:11-CR-64-TLS |
| | ) | |
| STEFANIE REDFERN | ) | |

**SENTENCING OPINION**

The Defendant, Stefanie Redfern, pled guilty to Count 5 of an Indictment, maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(2). An officer with the United States Probation Office prepared a Presentence Investigation Report (PSR) in anticipation of the Defendant's sentencing. On July 24, 2014, the Court held an evidentiary hearing in which the Defendant presented evidence, including the testimony of the Defendant's father, brother, step-mother, and the Defendant, regarding the history and characteristics of the Defendant as well as her role in the instant offense. The Defendant asks for a sentencing variance pursuant to the 18 U.S.C. § 3553(a) sentencing factors. For the following reasons, the Court finds that a downward variance is appropriate in this case.

**FINDINGS OF FACT**

The Defendant graduated from high school in the spring of 2006 after only three years, and then enrolled in Western Kentucky University at only 17-years-old. She struggled during her freshman year in college as she adjusted to the rigors of college life and being away from home for the first time at a young age. One year later the Defendant returned home and enrolled in Joliet Junior College, but soon after she quit school and returned to Bowling Green, Kentucky, moving in with James B. Nelson, the co-Defendant in this case. The Defendant met Nelson during

her freshman year at Western Kentucky and began a relationship with him upon her return to Kentucky.

A few months later, the nature of their relationship began to change as Nelson became more controlling and abusive. The Defendant endured physical and mental abuse if she did not comply with Nelson's expectations and demands. Around this time the Defendant learned that Nelson was dealing narcotics, and at his direction and supervision, the Defendant would assist him by packaging the narcotics, transporting and receiving shipments, and communicating with customers on his behalf. The Defendant returned home multiple times over the course of their relationship and her father, recognizing the harmful nature of the relationship, tried to convince the Defendant to stay and leave Nelson, but each time Nelson enticed her back and regained control over her, enabling him to continue his narcotics dealing and ensure its continued secrecy. Each time her family tried to help her and convince her to leave Nelson, the Defendant would further isolate herself from them, and would instead follow the instructions of Nelson.

The Defendant's relationship with Nelson ended with her arrest in this case. She was released on pretrial release on August 25, 2011, and but for one minor infraction has successfully complied with all her conditions of pretrial release for the past nearly three-and-a-half years. The lone instance was her failure to report to her probation officer that she received a ticket as part of an automobile accident she was involved in, thereby violating the condition that she report any involvement with a law enforcement officer to her probation officer. Since her arrest, she has actively participated in counseling sessions for substance abuse and psychotherapy, which have proven successful. She has maintained a drug-free and law-abiding lifestyle, and her relationships with her family are being restored.

The Defendant gave birth to a son in February 2012, and, with the help of her family, she is responsibly raising her son as a single mother. She also has continued her education and is motivated to have a successful career, both to provide for her family and lead a positive, law-abiding life. The Defendant testified that she has goals in her life now and is thankful for the opportunity to engage in counseling to address her problems and get her life back on track.

**ANALYSIS**

When sentencing a defendant, the district court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a)." *Nelson v. United States*, 555 U.S. 350, 351 (2009); *see also United States v. Panice*, 598 F.3d 426, 441 (7th Cir. 2010) (setting forth the two-step process that a sentencing court must engage in to determine a defendant's sentence); *United States v. Bush*, 523 F.3d 727, 729 (7th Cir. 2008) (same). The Court must apply the criteria set forth in § 3553(a) to the facts and circumstances of the Defendant's particular case. After considering the § 3553(a) factors, a court must impose a sentence that is sufficient, but not greater than necessary, to satisfy the following purposes of sentencing: just punishment, respect for the law, deterrence, protection of the public, and rehabilitation of the defendant. In making this determination, a district court may not presume that the guideline sentence is the correct one. *Nelson*, 555 U.S. at 352; *Rita v. United States*, 551 U.S. 338, 351 (2007). When evaluating the Guidelines recommendation, a court may consider whether the Sentencing Commission fulfilled its "characteristic institutional role" in adopting the particular guideline, *see Kimbrough v. United States*, 552 U.S. 85, 109 (2007), and the court may reject any guideline on policy

grounds, *United States v. Pape*, 601 F.3d 743, 749 (7th Cir. 2010). Ultimately, a court must make an independent determination, taking into account the types of sentences available, the other relevant § 3553(a) factors, and the arguments of the parties. *See Gall v. United States*, 552 U.S. 38, 49–50 (2007).

Of particular relevance here is § 3553(a)(1), which requires the Court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." But for the period of time in which the Defendant was in a relationship with Nelson, she has lived a law-abiding life. She was well-raised by a supportive family who have stepped up to provide her with the support and love she needs to turn her life around in a positive direction. Her family also offered support during her relationship with Nelson, although while under his control she would distance and isolate herself from them whenever they tried to help.

Since her arrest and release on pretrial release, the Defendant has successfully complied with the conditions of her pretrial release. In the course of over three years, the Defendant has had only a single violation of those conditions; failing to report a traffic ticket she received based on her involvement in a traffic accident. The Court notes that this was merely an infraction, not a misdemeanor or felony. She has not committed any other infractions or crimes during her pretrial release. She also has consistently passed urine analysis tests demonstrating that she has avoided the use of illegal drugs. The Defendant enrolled in junior college and is successfully progressing through her course of studies, all while providing for her son as a single mother.

The period of the Defendant's life that is an anomaly is her time living with and under the direction and control of her co-Defendant, Nelson. The Defendant did not use drugs or abuse any substances before or after her time with Nelson. Although the record reflects the Defendant

4

briefly used drugs while with Nelson, who himself used drugs, she has not used any illegal drugs since and appears to be free of any substance abuse issues. Further, her involvement in the instant offense was minimal compared to Nelson. In light of the physical and mental abuse suffered by the Defendant at the hands of Nelson, who directed and supervised the Defendant in her role in his narcotics dealing, the Defendant appears to have been coerced into her role, whereby Nelson used her in an effort to keep his illicit activities secret.

The Court finds that the Defendant understands the seriousness of her offense conduct and is making strides to turn her life around. The history and characteristics of the Defendant, as well as her limited role in this offense when compared to her co-defendant, indicate that the Defendant poses little risk to the public if she were to be sentenced to probation rather than a term of imprisonment. Indeed, for the past three-and-a-half years the Defendant has substantially complied with the conditions of her pretrial release.

Therefore, the Court finds that, based on the nature and circumstances of the offense, and the history and characteristics of the defendant, as well as all of the purposes of punishment—including the need to provide just punishment for the offense, to impose a sentence that reflects the seriousness of the offense and that promotes respect for the law, to adequately deter future criminal conduct, to protect the public from future crimes of the defendant, and to avoid unwarranted disparity in sentencing—a sentence of probation is sufficient, but not greater than necessary, to comply with the purposes of punishment, and anticipates imposing a term of probation at sentencing.

**CONCLUSION**

For the reasons stated above, the Court GRANTS the Defendant's request for a variance from the advisory Guideline range, as modified. The Court anticipates imposing a term of probation. The specific sentence to be imposed will be determined at the sentencing hearing, scheduled for Wednesday, February 11, 2015, at 11:00 AM.

SO ORDERED on February 10, 2015.

                                          s/ Theresa L. Springmann
                                          THERESA L. SPRINGMANN
                                          UNITED STATES DISTRICT COURT